

02/08/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TIMOTHY B. SAUNTRY and | § | Case No. 05-48175 |
| KAREN E. SAUNTRY, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| | § | |
| CADLEROCK JOINT VENTURE, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 06-4135 |
| | § | |
| TIMOTHY B. SAUNTRY and | § | |
| KAREN E. SAUNTRY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Before the Court is the Complaint Objecting to Debtors' Discharge (the "Complaint") filed by the Plaintiff, Cadlerock Joint Venture, L.P., pursuant to 11 U.S.C. § 727(a)(3) and (a)(5). The Court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(J). This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52.[1]

## BACKGROUND

The Debtors, Timothy and Karen Sauntry, jointly filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

October 4, 2005. The Debtors previously filed a Chapter 13 bankruptcy case in this Court on October 4, 2002. Their prior case, which was precipitated by Timothy Sauntry's gambling losses, was dismissed in June 2003.

Timothy Sauntry is employed as a service consultant for Superior Energy Services, LLC and was 52 years old at the time of trial. Karen Sauntry is employed as a teacher by the Prosper Independent School District and was 64 years old at the time of trial. The Debtors married in 1980 and have no dependents.

In their present bankruptcy case, the Debtors list assets of $8,913.68 in their bankruptcy schedules. The Debtors' Statement of Financial Affairs reflects that they received $81,451 in income from wages during 2004 and $123,513 during 2003. Their year-to-date income for 2005, according to their Statement of Financial Affairs, was $71,153 as of the date they filed for bankruptcy.

The Debtors' bankruptcy schedules contain at least 13 unsecured signature loans. Additionally, the Debtors' Schedule F – Creditors Holding Unsecured Nonpriority Claims ("Schedule F") shows at least 35 credit card debts. Karen Sauntry testified, credibly, that all but three of these credit card debts were incurred prior to their first bankruptcy and that they destroyed the credit cards during their prior bankruptcy case. Due to their poor credit, the Debtors were able to obtain only three credit cards after filing their prior bankruptcy petition (*i.e.*, a $200 credit line obtained by Karen Sauntry at Capital One, a separate $300 credit line obtained by Karen Sauntry from Capital One, and a $300 credit line obtained by Timothy Sauntry from Household Bank).

Timothy Sauntry has a gambling addiction. He gambles primarily at casinos and horse races, including horse races at Lone Star Park. Much of his gambling is done with

2

cash during business trips. He has obtained cash for gambling in a variety of ways, including signature loans, cash advances on credit cards, and cash withdrawn from bank accounts. Timothy Sauntry does not use a bookie or keep a "win/loss" diary, and the Debtors do not know precisely how much money Timothy Sauntry has lost as a result of his gambling addiction.[2] The Debtors' jointly filed tax returns from 2000 – 2004 show a total of $49,884 in gambling losses used to offset their income.

Prior to bankruptcy, Timothy Sauntry owned and operated an environmental services business known as East Texas Environmental Technicians. The check register for the business reflects numerous "owner's draws" in amounts ranging from $50 - $1,500 whereby Timothy Sauntry withdrew cash from the business over a period of several years. According to the Debtors' Statement of Financial Affairs, East Texas Environmental Technicians ceased operations in December 2005.

While their prior bankruptcy case was pending, the Debtors opened a joint account at Prosper State Bank. Timothy Sauntry sometimes withdrew funds from the account without telling his wife and used the money for gambling. The Debtors' exhibits contain copies of numerous bank notices regarding checks that were returned as unpaid due to insufficient funds. Karen Sauntry sought to solve this problem by removing her husband from the account, but the bank continued to allow him to make withdrawals and,

---

[2] In a deposition prior to trial, Timothy Sauntry testified as follows:

Q: Do you have any idea how much you estimate you lost gambling?
A: In this time frame?
Q. Yes.
A. I have no idea. A half-a-million dollars. I don't know.

Timothy Sauntry Dep., April 10, 2006, p. 79. In the Pretrial Order, the Plaintiff asserts that the Debtors "contend" that over $500,000 in gambling losses have occurred based on this exchange. The Court believes that Timothy Sauntry's deposition testimony is more accurately interpreted as expressing uncertainty as to the extent of his gambling losses.

sometimes, her husband forged her signature in order to withdraw money from the account.  Karen Sauntry testified, credibly, that Prosper State Bank is located in a small town, that she and her husband knew many of the employees, and that she closed the account rather than admit her husband's gambling addiction to them.

Karen Sauntry opened a personal bank account at Compass Bank in November 2004.  The checks written by Karen Sauntry from the accounts at Prosper State Bank and Compass Bank reflect ordinary consumer purchases and expenses, such as groceries, taxes and utility payments.  Additionally, Karen Sauntry wrote a number of checks to her husband for amounts ranging from $50 - $300.  She testified that she wrote these checks so that her husband could pay for business-related expenses.  She further testified that, despite her efforts to control her husband's access to their funds, he continued to obtain cash from her for gambling by overstating his business and personal expenses.

Karen Sauntry testified, credibly, that she has operated their affairs primarily on a cash basis since late 2004 as a result of her husband's gambling addiction.  She began receiving payroll checks in October 2005.  She testified that she cashed those checks and tried not to deposit money anywhere.  She paid creditors with money orders or cash and kept all remaining cash on her person during the day.  She testified credibly that, at night, she put the cash under her pillow or, occasionally, she put the cash in her car, locked the car, and slept with the keys under her pillow.

Prior to bankruptcy, the Debtors fell behind in their mortgage payments.  The Plaintiff initiated a foreclosure action and obtained a summary judgment against the Debtors in connection with the Plaintiff's foreclosure on the Debtors' home.  In particular, on August 3, 2005, the 401st Judicial District Court of Collin County, Texas,

entered a Judgment in favor of the Plaintiff, against the Debtors, jointly and severally, for an amount in excess of $175,000. No amounts were paid on this Judgment prior to bankruptcy. In their Schedule F, the Debtors list a debt of $186,366.81 owing to the Plaintiff based on the Judgment.

The Plaintiff deposed both Debtors on April 10, 2006 in connection with this adversary proceeding. The Debtors cooperated fully with the depositions and supplied the Plaintiff with voluminous documents in response to the Plaintiff's blanket discovery requests. These documents included Timothy Sauntry's pay stubs from January 2001 through November 2005; Karen Sauntry's pay stubs from February 2001 through October 2005; four years of income tax returns; bank statements and cancelled checks from the account at Prosper State Bank from the inception of the account in October 2002 through December 2004; bank statements and cancelled checks from their business and personal accounts at Compass Bank from December 2004 through December 2005; bank statements and cancelled checks from Timothy Sauntry's account at First State Bank from May 2004 through November 2004; business account records reflecting owner's draws and other payments from the bank account belonging to East Texas Environmental Technicians; documents relating to numerous payday loans and loans secured by the Debtors' personal goods; and documents relating to the Debtors' home mortgage and the Plaintiff's eventual foreclosure on their home.[3] The Debtors also provided the Plaintiff with all documents in their possession relating to the three credit cards they obtained after

---

[3] The Plaintiff misplaced the bulk of these documents after the deposition. In part as a result of this error, the Plaintiff moved for summary judgment based on the Debtors failure to provide him with assorted documents. After the Debtors replied to the Plaintiff's summary judgment request, the Plaintiff discovered its error and amended its summary judgment motion. The Court orally denied the Plaintiff's request for summary judgment at trial and entered an order denying the Plaintiff's summary judgment request on November 14, 2007.

they filed for bankruptcy in 2002.  With respect to the credit card debts they incurred prior to their 2002 bankruptcy case, Karen Sauntry testified, credibly, that they no longer had any credit card statements in their possession and could not afford to pay the various institutions the fees they charge to research and obtain records regarding old accounts.

The Plaintiff complained at trial that the Debtors had not provided it with all of the documents included in the Plaintiff's blanket discovery request, including all of their monthly credit card statements for the past five years, complete documentation of the pay day and signature loans listed in the Debtors' schedules, complete bank records for the past five years, and records substantiating the alleged extent of Timothy Sauntry's gambling losses.[4]  The Plaintiff offered the testimony of Yvonne Lepor to support its argument that the documents provided by the Debtors are insufficient to document their financial condition or the extent of Timothy Sauntry's gambling losses.  However, Ms.

---

[4] In the parties' Pretrial Order, the Plaintiff included a laundry list of disputes for this Court to decide.  The Plaintiff's list includes the following:

(1) Whether the Debtors have produced any documents to corroborate and explain the purported gambling losses of Timothy Sauntry;
(2) Whether the Debtors explanation of the gambling losses is convincing;
(3) Whether the Debtors failed to produce documents in the form of monthly statements or otherwise with respect to the vast majority of the credit card transactions listed on Schedules E and F such as monthly statements;
(4) Whether the Debtors failed to produce documents relating to the loan history on the signature loans listed on Schedules E and F;
(5) Whether the Debtors produced adequate documentation with respect to the signature loans listed on Schedules E and F;
(6) Whether the Debtors produced sufficient bank statements, cancelled checks and deposit slips produced by the Debtors for their accounts at First State Bank of Celina;
(7) Whether the Debtors produced documents regarding their stock sales;
(8) Whether the Debtors produced documentation regarding the life insurance policies;
(9) Whether the Debtors' financial statements have been produced;
(10) What was the total amount of gambling losses incurred by Timothy Sauntry;
(11) Whether the Debtors have concealed, destroyed, mutilated, falsified or failed to keep or preserve sufficient recorded information from which their financial condition or business transactions might be ascertained;
(12) Whether Debtors have satisfactorily explained lost assets allegedly attributable to gambling debts estimated at $500,000;
(13) Whether Debtors produced complete income tax returns for the years 2001, 2002, 2003 and 2004; and
(14) For what years did the Debtors maintain bank accounts at the First State Bank of Celina.

Lepor overlooked relevant documents in her analysis, and her testimony was not particularly credible or helpful.

Since most of Timothy Sauntry's gambling was done with cash in order to hide the extent of his addiction from his wife, the documentary evidence of his gambling and the amount of money he lost gambling is sparse.  In addition to their income tax returns, the documents produced by the Debtors include a check dated December 17, 2002, from the Debtors' checking account to Lone Star Park in the amount of $1,025.   The documents also show that Timothy Sauntry used an automatic teller machine at Lone Star Park to make two withdrawals from his account at First State Bank in 2004 – one on May 25, 2004 and another on June 11, 2005.   Additionally, Timothy Sauntry's credit card records from Household Bank reflect that he was in Shreveport, Louisiana in July 2005.

At the time of trial, Timothy Sauntry was attending "Gambler's Anonymous" to control his addiction.   Karen Sauntry testified that his gambling addiction has improved since he underwent a cancer-related surgery in or around March 2007.   He has gambled much less if at all.   Nonetheless, Karen Sauntry continues to operate their finances largely on a cash basis.

### DISCUSSION

Section 727(a) of the Bankruptcy Code provides that a bankruptcy court must grant a discharge to a debtor unless one or more of the specific grounds for denial of a discharge enumerated in paragraphs (1) through (12) is proven to exist.  The Plaintiff in this case seeks to deny the Debtors a discharge pursuant to paragraphs (3) and (5). Although the Plaintiff's adversary complaint and the parties' Pretrial Order do not address the Debtors' entitlement to discharge on an individual basis, each debtor's right to a discharge should be analyzed separately in a jointly filed case.  *See First Texas Sav.*

7

*Ass'n v. Reed (In re of Reed),* 700 F.2d 986, 993 (5th Cir. 1983) (holding that "the intent to defraud requisite under 11 U.S.C. § 727 must be shown for each debtor"). The mere existence of the marital relationship does not determine a spouse's entitlement to discharge. *See id.*

## 11 U.S.C. §727(a)(3)

Section § 727(a)(3) provides:

> (a) The court shall grant a debtor a discharge, unless— . . . (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C. § 727(a)(3). The purpose of this section is to give the trustee, creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and financial history. *See Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir. 1992). Where the debtors are married, both have an obligation to keep adequate records. *See Cox v. Landsdowne (In re Cox),* 904 F.2d 1399, 1402 (9th Cir. 1990); *D.A.N. Joint Venture, et al. v. Cacioli (In re Cacioli)*, 463 F.3d 229, 237 (2nd Cir. 2006).

"The plaintiff bears the initial burden of proving that the debtor's financial records are inadequate and that this failure prevented the plaintiff from ascertaining the debtor's financial condition." *Chemoil, Inc. v. Pfeifle (In re Pfeifle)*, 154 F. App'x 432, 433 (5th Cir. 2003) (citing *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003)). "If this burden is met, the burden shifts to the debtors to show the inadequacy is justified under all of the circumstances." *Id.* (citing *In re Dennis*, 330 F.3d at 703). The Fifth Circuit has never "delineated a precise threshold beyond which a debtor becomes accountable for further recordkeeping." *Id.* at 435. "A debtor's financial records need not

contain 'full detail,' but 'there should be written evidence' of the debtor's financial condition." *In re Dennis*, 330 F.3d at 703 (quoting *Goff v. Russell Co. (In re Goff)*, 495 F.2d 199, 201 (5th Cir. 1974)). The bankruptcy court has "'wide discretion'" in both its initial determination of whether the debtor maintained adequate records and the subsequent question of whether any failure to do so was justified, and its decisions constitute "finding[s] of fact reviewed for clear error." *Id.* (quoting *In re Goff*, 495 F.2d at 200, 202).

Here, there is no dispute that the Debtors have operated largely on a cash basis for several years or that it is impossible for them to document precisely how they have spent all of their income. Thus, the question for the Court to decide is whether the Debtors have a sufficient justification for not maintaining their financial records. The inquiry includes several relevant factors such as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *Meridian Bank v. Alten,* 958 F.2d 1226, 1230-31 (3rd Cir. 1992) (quoting *In re Wilson,* 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)). "[A]ny explanation given by the Debtor to explain any deficiency in his records must be evaluated both for its credibility and reasonableness under the circumstances of this Debtor's affairs and degree of sophistication and for the materiality of any insufficiency." *In re Benningfield,* 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989). A mere preference to operate on a cash basis or avoid taxes is insufficient. *See In re Ross*, 367 B.R. 577, 581 (Bankr. W.D. Ky. 2007); *In re Wynn,* 261 B.R. 286, 305 (Bankr. M.D. Ala. 2001).

9

The business and personal finances of the Debtors in this case were not particularly sophisticated and did not involve large or complex transactions. The documentary evidence shows that, for several years, the Debtors deposited their paychecks and the payments they received from clients of Texas Environmental Services Environmental Technicians into their personal and business bank accounts, respectively. The checks written by the Debtors reflect the payment of ordinary expenses and household bills. The only unusual aspect of the Debtors' bank account records is the number of cash withdrawals and checks written to cash – and, of course, the decision to operate largely on a cash basis beginning in late 2004. However, the Court is firmly convinced from the evidence presented, including the credible testimony of Karen Sauntry, that this decision was made as a result of Timothy Sauntry's gambling addiction, not a desire to hide assets from their creditors, and preceded the Plaintiff's judgment against them.

The Plaintiff asserts, correctly, that a denial of discharge for failure to preserve records does not require intent to defraud a creditor. *Compare* 11 U.S.C. § 727(a)(2) (requiring that claimant show that debtor had "intent to hinder, delay, or defraud a creditor or an officer of the estate") *with* 11 U.S.C. §727(a)(3) (no comparable requirement). *See also Dolin v. Northern Petrochemical Co. (In re Dolin),* 799 F.2d 251 (6th Cir. 1986) (because denial of discharge under §727(a)(3) applied, there was no need for appellate court to inquire into whether defendant had the necessary intent to defraud creditors under §727(a)(2)). However, it is also true that the mere ability of a complainant to prove that a specific record was not kept does not warrant a denial of a discharge in its entirety, one of the harshest sanctions under the Bankruptcy Code. As

relevant to this case, §727(a)(3) does not require a debtor with a gambling addiction to keep a "win/loss" diary in order to receive a discharge.  *See Peterson v. Scott (In re Scott),* 172 F.3d 959, 970 (7th Cir. 1999) (discussing the purpose and scope of §727(a)(3)); *Buckeye Retirement Properties of Indiana, Inc.* v. Tauber (*In re Tauber),* 349 B.R. 540, 557 (Bankr. N.D. Ind. 2006) (declining to "impose on a debtor, who himself/herself may have gambling addiction issues, a duty to maintain a detailed win/loss diary, especially with respect to gambling matters relating to a non-debtor spouse.").  Moreover, Karen Sauntry's failure to keep any record of her husband's gambling winnings or losses is justified.  Karen Sauntry did not participate in her husband's gambling, and Timothy Sauntry actively tried to hide the scope of his addiction from her.  Karen Sauntry's decision to conduct their affairs primarily on cash basis was a prudent, reasonable and justifiable attempt to control Timothy Sauntry's addiction by controlling his access to their money.

The Plaintiff's complaint that the Debtors' records are "sporadic," extended to its logical conclusion, would require the Debtors to produce continuous, exhaustive records without any gaps at all.  Such perfection is not required by the law. *In re Dennis*, 330 F.3d at 703; *Johnson v. Greene (In re Greene)*, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (citing *Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 592 (Bankr. E.D. Ark. 1991) (citations omitted)); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 898 (Bankr. N.D. Ill. 2003) (citing *Spiezio v. Vitek (In re Vitek)*, 271 B.R. 551, 558 (Bankr. S.D. Ohio 2001)).  Notably, the Debtors produced income tax returns, which are "the 'quintessential documents' in a personal bankruptcy." *Id.* (quoting *Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830, 833 (S.D.N.Y. 1993)).  Moreover, the Debtors

provided numerous additional documents, including pay stubs, investment account statements, bank statements, credit card statements, and check registers for both their personal and business accounts.  These documents sufficiently identify the Debtors' transactions so that an intelligent inquiry can be made of them.  The Court concludes that, under the circumstances of this case, Timothy Sauntry's failure to keep detailed records of his gambling losses and the Debtors' failure to maintain and preserve records relating to their use of cash is justified.

### 11 U.S.C. §727(a)(5)

Section 727(a)(5) states that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  The initial burden of going forward with evidence is on the objector, who must introduce more than merely an allegation that the debtor has failed to explain losses.  Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened.  *In re Reed*, 700 F.2dat 993.

A satisfactory explanation has not been definitively defined, but the debtor probably must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct.  Lack of wisdom in the debtor's expenditures, by itself, is not grounds for denial of a discharge.  *See Great Am. Ins. Co. v. Nye (In re Nye)*, 64 B.R. 759, 762-63 (Bankr. E.D. N.C. 1986) (explanation need not be meritorious to be satisfactory).  However, an explanation that is based primarily upon an estimate of the debtor founded upon nothing by way of books, records or other corroborating evidence

has been held unsatisfactory.  *See In re Reed*, 700 F.2d at 993 (debtor's explanation that almost $20,000 was consumed by undocumented business and household expenses and gambling debts was unsatisfactory).   More is required of the debtor in the way of explanation than mere generalities.  *See Casa Investments Co. v. Brenes (in re Brenes)*, 261 B.R. 322, 338 (Bankr. D. Conn. 2001) (debtor's testimony and records submitted showed that much of the "loss of assets" was due to different valuations resulting from purpose of valuations and from substantial depreciation in value of some assets); *In re Lee*, 309 B.R. 468, 479-80 (Bankr. W.D. Tex. 2004) (finding debtor's explanation of his use of cash sufficient).

The majority of the decisions involving §727(a)(5) objections to discharge arising out of a debtor's gambling losses and failure to maintain records supports the proposition that a debtor must adduce some corroborating documentary or testimonial evidence regarding the gambling losses.  *In re Mantra,* 314 B.R. 723, 731 (Bankr. N.D. Ill. 2004) (collecting cases).   This is especially true where the debtor keeps no records of the gambling losses.  *See Matter of Reed*, 700 F.2d at 993; *In re Dolin,* 799 F.2d 251, 253 (6th Cir. 1986); *In re Bressler,* 321 B.R. 412, 418 (Bankr. E.D. Mich. 2005); *Napolitano v. McNamara (In re McNamara),* 310 B.R. 664, 667 (Bankr. D. Conn. 2004); *Haynes v. Carter (In re Carter),* 274 B.R. 481, 485-86 (Bankr. S.D. Ohio 2002); *Solomon v. Barman (In re Barman),* 244 B.R. 896, 901 (Bankr. E.D. Mich. 2000); *Sicherman v. Murphy (In re Murphy),* 244 B.R. 418, 421-22 (Bankr. N.D. Ohio 2000); *Cassady-Pierce Co. v. Burns (In re Burns),* 133 B.R. 181, 185 (Bankr. W.D. Pa. 1991); *Manhattan Leasing Sys., Inc. v. Goblick (In re Goblick),* 93 B.R. 771, 775 (Bankr. M.D. Fla. 1988). However, where there are some personal records of the debtor's affairs, such as checking

13

account records, *Marshall v. McCaffrey (In re McCaffrey),* 216 B.R. 196, 202 (Bankr. E.D. Mich .1997), or where the debtor has other witnesses corroborate his explanation of gambling losses, such as a spouse, *Koppey v. Hirsch (In re Hirsch),* 36 B.R. 643, 645 (Bankr. S.D. Fla. 1984), courts have held this evidence sufficient to overcome the §727(a)(5) objection to discharge.

In this case, both Debtors credibly testified regarding Timothy Sauntry's gambling addiction and plausibly explained their loss of assets. *See In re Huynh*, 368 B.R. 838, 842 (Bankr. D. Minn. 2007) (debtor testified plausibly that she sold property at a discount in order to fund her gambling addiction). Although it is unclear from the record how much Timothy Sauntry has gambled away over the past few years, it is clear that he has gambled away the Debtors' disposable income and more, and the bank and credit card records provided by the Debtors generally corroborate their testimony regarding the extent of Timothy Sauntry's gambling addiction. The documents also show that Timothy Sauntry used an automatic teller machine at Lone Star Park to make two withdrawals from his account at First State Bank in 2004, and the Debtors tax jointly filed tax returns include $10,906 in gambling wins/losses during 2001, $32,988 during 2002, $1,373 during 2003 and $4,617 during 2004. The fact that Timothy Sauntry made numerous small bank withdrawals and credit card charges over a period of years, rather than a few extraordinary withdrawals or charges, further supports the Debtors' testimony that Timothy Sauntry has an ongoing gambling problem.

Karen Sauntry has acted in good faith, and, as previously discussed, her decision to conduct their affairs primarily on a cash basis was reasonable and businesslike under the circumstances. Much of the unsecured debt listed in the Debtors' bankruptcy

14

schedules was incurred before their 2002 bankruptcy case.  The Plaintiff foreclosed on their home following the dismissal of the Debtors' prior case, and the Debtors now have assets valued at less than $9,000 according to their current bankruptcy schedules.  The Court concludes that, under the circumstances of this case, the Debtors have satisfactorily explained any loss of assets.

### CONCLUSION

For the foregoing reasons, the Court concludes that the Debtors have carried their burdens under § 727(a)(3) and (a)(5).  The Plaintiff has failed to establish, by a preponderance of the evidence, that the Debtors should be denied a discharge in their underlying bankruptcy case.  The Court will enter a Judgment consistent with this Memorandum Opinion.

Signed on 2/8/2008

SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

15